■ In the Matter of the Commitment of STAR A. and Another, Dependent Children. TALBOT PERKINS CHILDREN'S SERVICES, Appellant; SARAH A. R., Respondent. — Order, Family Court of the State of New York, New York County (Thorpe, J.), entered on March 20, 1980, affirmed for the reasons stated by Thorpe, J., at Family Court, without costs and without disbursements. Concur — Sandler, Carro and Fein, JJ.; Kupferman J. P., and Sullivan, J., dissent in a memorandum by Sullivan, J., as follows.

Sullivan, J. (dissenting). Although the petition to terminate parental rights was brought on alternate grounds, viz., permanent neglect by reason of the respondent mother's failure to maintain contact with or plan for the future of the children, and her inability to care for the children in the foreseeable future by reason of mental illness, the agency elected to proceed solely on the issue of permanent neglect.[*] Family Court dismissed the cause of action based on permanent neglect, holding that although respondent failed to plan for the future of the children, the agency did not make "diligent efforts", as required. We would reverse the Family Court's decision, which, although thorough and well reasoned, treats, we believe, too lightly respondent's almost total lack of co-operation with the agency. To terminate parental rights because of permanent neglect a petitioner is obliged to establish by a preponderance of the evidence that the parent "has failed for a period of more than one year following the date such child came into the care of an authorized agency substantially and continuously or repeatedly to maintain contact with or plan for the future of the child, although physically and financially able to do so, notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship when such efforts will not be detrimental to the best interest of the child." (Social Services Law, § 384-b, subd 7, par [a].) Diligent efforts mean "reasonable attempts by an authorized agency to assist, develop and encourage a meaningful relationship between the parent and child." (Social Services Law, § 384-b, subd 7, par [f].) The children, 16 months and four months of age, respectively, came into the care of the Commissioner of Social Services of the City of New York on November 2, 1972, when respondent was found wandering the streets with them. They were transferred to the agency's care on September 25, 1973, and judicially placed with the commis-

---

[*] The agency did not introduce any evidence as to respondent's mental illness during the period covered by the petitions or for the foreseeable future. This cause of action was dismissed without prejudice.

sioner on December 11, 1974 at a dispositional hearing in a neglect proceeding. In a period of almost four years, from 1973 through 1977, the agency scheduled 18 visits, of which respondent canceled, missed or failed to confirm nine. In May, 1975, respondent told the social worker that she could no longer plan for the children, although she did not wish to surrender them. In June, 1975, one month later, the agency set up an appointment with a psychiatrist which respondent failed to keep. She also canceled a second appointment. In October, 1976, respondent told the caseworker that she did not wish at that time to have any further discussions about planning for the children. In May, June and July 1977, she failed to keep appointments made with her by the agency to see her children. Her correspondence with the agency consisted of sending application forms for colleges and other schools, order forms for encyclopedias, subscriptions to magazines, charge applications to Lord & Taylor, and Hallmark kits so the children could learn to sell greeting cards. The agency caseworker testified that respondent was not referred to out-patient psychiatric clinics because she refused to take her medication, and when she was hospitalized, she would either abscond or furnish inaccurate information. When the caseworker tried to discuss the specific actions that respondent would have to take for the children's return, she would throw a tantrum. Respondent receives financial support from the Veterans' Administration, the Department of Social Services, and assistance from two young sons, who reside with a daughter. The possibility of involving respondent's family as a resource for the care of the children was explored, but various problems precluded each of them from assisting. It was also apparent that respondent did not want anyone else involved. It seems to us that the agency's efforts were reasonable under the circumstances. Respondent was totally un-co-operative, had failed to develop a plan, missed appointments set up by the agency to see her children and a psychiatrist, and, in general, expressed no interest in having the children returned to her. In short, her own conduct frustrated the efforts of the agency. The courts should not place an impossible burden upon an agency in its efforts to develop a relationship between the parent and child. "Diligent" does not mean relentless. "When the natural parent fails to accept the parental role, even though the result of shortcomings for which he or she may not be fully responsible, the 'best interests' of the child, the pivotal consideration underlying all of these proceedings, dictate that the right to custody be terminated." *(Matter of Orlando F.,* 40 NY2d 103, 111.) "[W]e must not become enmeshed in an analysis of the niceties of the precise degree of required diligence of effort, where to do so would jeopardize the welfare of the child." *(Matter of Joyce A.R.,* 52 AD2d 882, citing cases.) Since it is apparent that respondent has long ago abandoned any realistic goal of ever assuming her parental responsibility, and has frustrated the agency's efforts to encourage the parental relationship, it seems clear that the children's only chance at a normal childhood lies in termination of respondent's parental rights. Both children are doing well in their foster home. They are described as healthy and bright. If respondent had her way the children would remain in foster care until they completed college. Accordingly, the order dismissing the petition should be reversed, and the matter remanded for a dispositional hearing.